**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION *as Trustee for the Benefit of the Certificate Holders Under the Pooling and Service Agreement Relating to the Mortgage Backed Pass Through Certificates Series 2002-29* | :<br>:<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO. 10-cv-5201 |
| v. | :<br>: |
| FIRST AMERICAN TITLE INSURANCE CO. | :<br>:<br>: |

**MEMORANDUM**

YOHN, J.                                                                                          May 7 , 2013

U.S. Bank, N.A. ("U.S. Bank") and First American Title Insurance Company ("First

American") have filed cross-motions for summary judgment.  U.S. Bank brought this suit against

First American for breach of contract and bad faith under a title insurance policy with respect to a

securitized mortgage, of which U.S. Bank is the trustee.  First American argues that the claims

are barred by res judicata, collateral estoppel, and the statute of limitations, that there are no

genuine issues of material fact with respect to the claims, and that it is entitled to judgment as a

matter of law.  After careful review of each party's motion for summary judgment, the responses

thereto, and the attached exhibits, I conclude that under the undisputed facts U.S. Bank's breach

of contract claim is barred by the statute of limitations, and that there are no genuine issues of

material fact with respect to the bad faith claim and that the claim fails as a matter of law.

Therefore, summary judgment is granted in favor of First American and denied as to U.S. Bank.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

In July 2002, Allied Mortgage Group, Inc. ("Allied") issued a loan to Christopher P. Fekos for real property located at 99 Alexander Drive, McMurray, Pennsylvania. (Am. Compl. ¶ 6.) Allied purchased a title insurance policy from First American in connection with the loan that insured Allied's mortgage as a first lien on the Fekos property up to $868,500.00. (*Id.* ¶ 7.) First American assigned the duties of closing and recording the mortgage to its agent, Ideal Settlement Services, Inc. ("Ideal"), along with the duty of satisfying an existing mortgage on the property held by Beneficial Consumer Discount Company ("Beneficial"). (*Id.* ¶¶ 8-9.) Ideal failed to satisfy the Beneficial mortgage and promptly record the Allied mortgage; consequently, by the time it recorded the Allied mortgage on March 4, 2003, two intervening mortgages had already been recorded: one by Centex Home Equity Co. ("Centex") and one by Bank Pittsburgh. (*Id.* ¶¶ 9-10.) Fairbanks Capital Corp. ("Fairbanks"), servicer for the Allied mortgage, discovered the title defect and provided First American with notice of a claim under the title insurance policy on December 8, 2003. (*Id.* ¶¶ 23, 27; *see also* Pl.'s Mot. Summ. J. Ex. E, pt. C.) First American responded to Fairbanks on December 15, 2003, stating that it "stands behind its policy as issued" and "will indemnify should [the policyholder] suffer a loss." (Am. Compl. ¶ 28; *see also* Pl.'s Mot. Summ. J. Ex. E, pt. C.)

On December 26, 2003, Allied assigned the mortgage and the title insurance policy for the Fekos property to a securitized trust, entitled "Certificate Holders Under the Pooling and Servicing Agreement Relating to the Mortgage Backed Pass Through Certificates Series 2002-

---

[1]These facts are largely derived from U.S. Bank's amended complaint, which First American acknowledges are not in dispute. (Def.'s Mot. Summ. J. 4 n.2.)

2

29" (the "Trust"), of which Bank One, N.A. ("Bank One") was the trustee.[2]  (Am. Compl. ¶ 19; Pl.'s Mot. Summ. J. 4.)  On February 1, 2004, U.S. Bank purchased a book of the institutional trust business from Bank One, and as a result U.S. Bank became the trustee of the Trust.[3]  (Am. Compl. ¶ 20; Pl.'s Mot. Summ. J. Ex. Q.)

Fekos eventually defaulted on his loans.  Bank Pittsburgh obtained a foreclosure judgment against the Fekos property on August 2, 2005.  (Am. Compl. ¶ 25.)  The property was subsequently sold at a sheriff's sale to Bank Pittsburgh on October 7, 2005, thus discharging the Allied (now U.S. Bank) mortgage.  (*Id*. ¶ 26.)   On June 29, 2006, Fairbanks filed a notice of claim with First American, requesting that First American take all necessary actions to resolve the adverse claim as a result of the foreclosure and sheriff's sale of the Fekos property.  (Pl.'s Mot. Summ. J. Ex. E, pt. F.)  First American responded on July 27, 2006, and informed Fairbanks that it had initiated an investigation into the claim and would contact Fairbanks as soon as the facts had been ascertained.  (*Id*. Ex. E, pt. G.)

On March 23, 2007, First American brought suit against JP Morgan Chase ("JP Morgan")

---

[2]The "Corporate Assignment of Mortgage" states that on December 26, 2003, Allied Mortgage Group, Inc. assigned the mortgage to the real property located at 99 Alexander Dr., McMurray, PA 15317, to Bank One, N.A. as Trustee for the Benefit of the Certificate Holders Under the Pooling and Service Agreement Relating to the CSFB Mortgage-Backed Pass-Through Certificates Series 2002-29.  The document also specifies that the mortgage originated on July 2, 2002, and was executed by Christopher P. and Deborah A. Fekos to Allied Mortgage Group, Inc. (Pl.'s Mot. Summ. J. Ex. I., pt. C.)

[3]On February 26, 2004, Mary R. Fonti, vice president of JP Morgan (formerly known as Bank One, N.A.), issued a notice that effective February 1, 2004, Bank One resigned as trustee to the Pooling and Service Agreements listed on Schedule I attached to the notice, and that U.S. Bank accepted appointment as successor trustee.  (Pl.'s Mot. Summ. J. Ex. Q 2.)  In paragraph 18 of Schedule I, CSFB Mortgage-Backed Pass-Through Certificates Series 2002-29 is listed as one of the Pooling and Servicing Agreements to which U.S. Bank was now the trustee.  (*Id*. 6.)

in the Court of Common Pleas of Washington County, Pennsylvania (the "Washington County Action"), seeking a declaratory judgment as to its obligations to JP Morgan under the title insurance policy. (Pl.'s Mot. Summ. J. 11; Ex. E, pt. H.) Bank One had merged with JP Morgan in July 2004, and neither First American nor JP Morgan appears to have realized until 2010—years after First American commenced the Washington County Action—that JP Morgan had no interest in the Allied Mortgage because it had been transferred to U.S. Bank prior to the merger. (*Id*. at 11.) Upon realizing the error, JP Morgan moved to substitute U.S. Bank as the defendant trustee in the Washington County Action, but that motion was denied on August 24, 2010, without explanation and U.S. Bank never became a party to the Washington County action. (*Id*. at 12.) On April 1, 2011, the Court of Common Pleas of Washington County found that U.S. Bank was the proper trustee, that JP Morgan had no interest in the title insurance policy, and that First American owed no obligation to JP Morgan. Thus, the court granted First American's motion for summary judgment against JP Morgan with regard to the Declaratory Judgment action. (Def.'s Mot. Summ. J. Ex. L.) The judgment was affirmed by the Superior Court of Pennsylvania on April 3, 2012. (*Id*. Ex. M.)

U.S. Bank brought this action on October 5, 2010, alleging breach of contract and bad faith insurance claims against First American. I dismissed U.S. Bank's original complaint without prejudice to its right to file an amended complaint with more specific factual allegations. U.S. Bank filed its amended complaint on August 17, 2011. Both parties now seek summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  To establish that there is no genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c).

## III.    DISCUSSION

U.S. Bank claims that First American is in breach of contract under the title insurance policy, and also claims that it is in violation of 42 Pa. Cons. Stat. § 8371 for acting in bad faith. Meanwhile, First American argues that U.S. Bank's claims are barred by claim and issue preclusion and that the statute of limitations has expired.  Furthermore, First American argues that if either or both of the claims survive those arguments, it did not breach the title insurance contract or deal in bad faith.  I begin my analysis with First American's preclusion and statute of limitations arguments, for if the claims are indeed barred under either theory it makes addressing the merits of the claims unnecessary.

## A.    Claim Preclusion and Issue Preclusion

"Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of' the state from which they emerged.  Section 1738 'has long been understood to encompass the doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion.'" *R&J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 426 (3d Cir. 2011) (quoting *San Remo Hotel v. City & Cnty. of S.F.*, 545 U.S. 323, 326 (2005)).  In its motion for summary judgment, First American argues that U.S. Bank's claims are barred by the doctrines of claim preclusion and issue preclusion because of the Washington County trial court's grant of summary judgment and the affirmation of that judgment by the Superior Court on appeal.  For the following reasons, I conclude that the claims are not barred by these doctrines.

### 1.    Res Judicata

"Res judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous litigation."  *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006) (citing *R/S Fin. Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998)).  Under Pennsylvania law, the following elements must be present for res judicata to apply: "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons or parties to the action; and (4) identity of the capacity of the parties suing or being sued."  *Daley v. A.W. Chesterton, Inc.,* 37 A.3d 1175, 1189-90 (Pa. 2012).  "The essential inquiry [in a res judicata analysis] is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present

parties had an opportunity to appear and assert their rights." *Chada v. Chada*, 756 A.2d 39, 42 (Pa. 2000) (quoting *Hammel v. Hammel*, 636 A.2d 214, 218 (Pa. Super. Ct. 1994)).

The state court proceeding was a declaratory judgment action brought by First American against JP Morgan. U.S. Bank was not a party to the action. For that reason alone, claim preclusion is not appropriate, as the third element is missing. First American argues that claim preclusion is justified in this case, even though U.S. Bank was not a party to the previous action, because the doctrine "not only bars subsequent claims against the same defendants that were raised before but also those claims that should have been raised," citing *Scott v. Mershon*, 657 A.2d 1304 (Pa. Super. Ct. 1995) for support. (Def.'s Mot. Summ. J. 10.) Not only is this argument unpersuasive, it is a non sequitur. First, in *Scott* the parties to both actions were identical. *See Scott*, 657 A.2d at 1307. Second, as it was never a party in the prior proceeding, U.S. Bank never had an opportunity to appear and assert its rights, an opportunity that is essential in the eyes of the Pennsylvania Supreme Court before claim preclusion can be applied. *See Chada*, 756 A.2d at 42. For these reasons, First American's argument for claim preclusion fails.

### 2. Collateral Estoppel

Issue preclusion, or collateral estoppel, is somewhat broader than claim preclusion in that it "is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). With respect to a legal standard, the Third Circuit has stated the following:

> Under Pennsylvania law, issue preclusion applies where: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted

was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357-58 (3d Cir. 1999).  "The party asserting issue

preclusion . . . bears the burden of proving its applicability to the case at hand."  *Dici v.*

*Pennsylvania*, 91 F.3d 542, 548-49 (3d Cir. 1996).  If even one element is not present, a court

should not apply issue preclusion to the case.  *See id*.

First American asserts that issue preclusion should bar U.S. Bank's suit because of the

grant of summary judgment in First American's favor by the Washington County court, and the

Superior Court's affirmation of that judgment.  First American argues that on August 24, 2010,

through its denial of JP Morgan's motion to amend caption by adding U.S. Bank as a party, the

Washington County trial court conclusively decided—and the Superior Court affirmed—that

U.S. Bank's claims were time-barred as of July 9, 2010, when JP Morgan filed the motion.  It

argues that the parties against whom issue preclusion is sought are the same, or at least in privity,

because JP Morgan and U.S. Bank share the same interests and are asserting the same rights

under the insurance policy.  First American avers that U.S. Bank had a full and fair opportunity

to litigate the issues raised in this case during the state court proceedings when it attempted to

insert itself into the action through JP Morgan's motion to amend caption (even though the

motion was filed only by JP Morgan).  Finally, First American argues that the trial court's grant

of summary judgment, and the Superior Court's order affirming the judgment, constitute a valid

judgment on the merits.

A "fundamental question [with regard to issue preclusion] is whether the issue has been

*actually decided* by a court in a prior action."  *R&J Holding Co.*, 670 F.3d at 429 (citing *McNeil*

8

*v. Owens-Corning Fiberglas Corp.*, 680 A.2d 1145, 1147-48 (Pa. 1996)). "[W]hen an issue of fact or of law is *actually litigated* and determined by a valid final judgment, and determination of the issue was *essential to judgment*, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim." *McNeil*, 60 A.2d at 1147-48 (emphases added). Here, there is clearly a question as to whether the statute of limitations, breach of contract, and bad faith issues were actually litigated in the prior state court proceedings, and furthermore, whether the issues were actually decided and essential to the judgment. In matters concerning issue preclusion, the Supreme Court of Pennsylvania has adopted section 27 of the Restatement (Second) of Judgments, and turns to its comments for guidance when deciding whether to apply the doctrine to a subsequent action. *See Pa. State Univ. v. Cnty. of Centre*, 615 A.2d 303, 306-07 (Pa. 1992). Accordingly, I will do the same.

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated . . . ." Restatement (Second) of Judgments § 27 cmt. d. Comment e to section 27 states, "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." Restatement (Second) of Judgments § 27 cmt. e. Further in the commentary, comment h provides:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27 cmt. h. With these comments in mind, I conclude that

issue preclusion is not appropriate in this case.

To begin, after a thorough review of the state court record, it appears that the issues of breach of contract, bad faith, and statute of limitations were not actually litigated. What was litigated was whether First American had any obligations to JP Morgan as the successor by merger to Bank One under the title insurance policy, and if so, the nature of those obligations. *See* Brief for Appellee at 9, *JP Morgan Chase & Co. v. First Am. Title Ins. Corp.*, No. 736 WDA 2011, 2011 WL 8007802 (Pa. Super. Ct. Oct. 23, 2011). After a lengthy period of litigation, the trial court determined that U.S. Bank was the proper trustee under the Pooling and Service Agreement, that JP Morgan lacked standing, and it therefore granted summary judgment in favor of First American, declaring it did not have any obligations to JP Morgan. *See First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, No. 2007-1773, at 5 (Wash. Cnty. Ct. Com. Pl. Apr. 1, 2011). The trial court further granted summary judgment in favor of First American with respect to JP Morgan's counterclaims of breach of contract and bad faith because it was not a party in interest and could not assert those causes of action on behalf of the Trust. *See id.* at 5-6. The trial court did not base this decision on insufficient factual allegations in the pleadings, or on any evidence, or lack thereof, of a breach of contract or bad faith; it based the decision solely on its determination that JP Morgan lacked standing to assert those claims. Not only were the issues of breach of contract and bad faith not actually litigated, they were never actually decided by the trial court, nor was such a determination essential to the judgment. Therefore, issue preclusion is not appropriate with respect to those claims.

First American relies heavily upon the Superior Court's decision affirming the grant of summary judgment to support its argument that the statute of limitations issue has been

previously decided and should be afforded preclusive effect. In its opinion, issued April 3, 2012, the Superior Court briefly addressed JP Morgan's appeal of the trial court's decision not to allow it to amend the caption and substitute U.S. Bank as the proper trustee. *See First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, 736 WDA 2011, 2011 WL 8007802, at 11-13 (Pa. Super. Ct. Apr. 3, 2012). With respect to the trial court's denial of the motion to amend the caption, the Superior Court stated, "Here, after the statute of limitations had run, Appellant sought to substitute a new and distinct party, U.S. Bank, for itself." *Id*. at 12. The court made one additional mention of the statute of limitations as it pertained to the trial court's decision when it stated, "The trial court properly denied Appellant's motion to substitute a new and distinct party after the statute of limitations had expired." *Id*. at 13. It is upon these statements that First American bases its argument that the statute of limitations issue has been decided.

Again, after a thorough review of the state court record, issue preclusion is not warranted with respect to the statute of limitations issue for several reasons. First, and most obvious, U.S. Bank was never a party or in privity with a party to the previous action. Likewise, it did not have a full and fair opportunity to litigate the statute of limitations issue. Hence, it never could have obtained review of the previous decision. Section 28 of the Restatement (Second) of Judgments provides exceptions to the rule of issue preclusion. The first exception states that issue preclusion is not appropriate where "[t]he party against whom issue preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments § 28 (1). Assuming, *arguendo*, that the statute of limitations issue was actually litigated and decided in the state court action (a topic to be addressed later), comment h to section 28 advises that "when a second action is brought, due consideration of the interests of

11

persons not themselves before the court in the prior action may justify relitigation of an issue actually litigated and determined in that action." Restatement (Second) of Judgments § 28 cmt. h. The present matter, being exactly such a scenario, counsels against applying issue preclusion.

Second, the state court record leads me to conclude that the statute of limitations issue was not actually litigated, for neither U.S. Bank nor JP Morgan had a "full and fair opportunity to litigate the issue in question." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). JP Morgan did not make any mention of a statute of limitations issue in its memorandum supporting its motion to amend the caption. *See* Motion to Amend Caption, *First Am. Title Ins. Co. v. JP Morgan Chase & Co.*, No. 2007-1773 (Wash. Cnty. Ct. Com. Pl. July 9, 2010). In its memorandum opposing JP Morgan's motion, First American made two slight references to a running of the statute of limitations. *See* Response to Defendant JP Morgan Chase & Co.'s Motion to Amend Caption, *First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, No. 2007-1773, at 6-8 (Wash. Cnty. Ct. Com. Pl. July 20, 2010). In the first reference, First American states that it opposes the substitution of a new party—here U.S. Bank—because if allowed, such a substitution may afford U.S. Bank the opportunity to "avoid a potential statute of limitations defense . . . ." *Id*. at 6. In the second mention, First American conclusorily asserted that "any action . . . by U.S. Bank against First American is barred by the statute of limitations," without providing any argument as to why. *Id*. at 8. Similarly, the statute of limitations issue was not addressed by either party in the briefs provided to the Superior Court when the grant of summary judgment was appealed. After reviewing the motions and briefs to the state trial and appellate courts, it does not appear that the statute of limitations issue was raised or that it was submitted for determination. *See* Restatement (Second) of Judgments § 27 cmt. d. Therefore, I conclude it

was not actually litigated, and certainly not by U.S. Bank.

Third, the statute of limitations issue was never actually decided by the trial court, nor was it essential to the judgment of the Superior Court. "[I]f there is no showing as to the issues that were actually decided, there is no issue preclusion." 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4420, pp. 184-85 (2d ed. 1981). Here, the Washington County trial court did not state its reasons for denying JP Morgan's motion to amend caption in its order issued August 24, 2010. *See First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, No. 2007-1773 (Wash. Cnty. Ct. Com. Pl. Aug. 24, 2010). The trial court prepared two opinions with respect to its grant of summary judgment in favor of First American: one that was issued upon consideration of First American's motion for summary judgment, and another prepared for the Superior Court pursuant to Pennsylvania Rule of Appellate Procedure 1925 after the appeal. *See First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, No. 2007-1773 (Wash. Cnty. Ct. Com. Pl. Apr. 1, 2011); *First Am. Title. Ins. Corp. v. JP Morgan Chase & Co.*, No. 2007-1773 (Wash. Cnty. Ct. Com. Pl. Aug. 10, 2011). Neither opinion mentions anything about a statute of limitations issue with respect to U.S. Bank, or that this issue was even litigated. The trial court's only mention of JP Morgan's attempt to substitute U.S. Bank as the party in interest comes in its opinion prepared for the Superior Court, in which the court states, "JP Morgan's attempt to amend the caption was really an attempt to substitute a party, to replace itself with U.S. Bank. *A substitution would not be appropriate at this stage of the proceedings*." *See First Am. Title Ins. Corp.*, No. 2007-1773 at 6 (Wash. Cnty. Ct. Com. Pl. Aug. 10, 2011) (emphasis added). While one can speculate as to whether the trial court considered the statute of limitations when it denied the substitution of U.S. Bank, it is clear that there is nothing dispositive in the record to show that

it actually determined the issue.

First American vigorously argues that the statute of limitations issue was decided by the Superior Court on appeal. The Superior Court determined that the trial court committed no error of law or abuse of discretion in denying JP Morgan's motion to amend caption and granting summary judgment to First American once it determined that JP Morgan was not a party in interest. *See First Am. Title Ins. Co.*, No. 736 WDA 2011, at 13. In discussing the trial court's denial of the motion to amend, it appears that the Superior Court assumed that the statute of limitations had run on U.S. Bank. *See id.* ("The trial court properly denied [JP Morgan's] motion to substitute a new and distinct party after the statute of limitations had expired."). Its reference to the statute of limitations is not necessarily true, nor was a determination of the statute of limitations necessary in affirming the trial court's judgment. "If issues are determined, but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 27 cmt. h. Here, it was not necessary that the Superior Court address the statute of limitations issue, something that was not discussed anywhere in the trial court opinion. The trial court could have denied amendment of the caption for a host of reasons: it was not clear whether JP Morgan had standing in the suit; it was undetermined whether U.S. Bank had standing in the suit; or perhaps because the trial court felt there would be some amount of prejudice or surprise to First American in allowing the substitution of a new and distinct party so late into litigation. *See Jacob's Air Conditioning and Heating v. Assoc. Heating and Air Conditioning*, 531 A.2d 494, 496 (Pa. Super. Ct. 1987). The trial court is given broad discretion in granting or denying amendments, and here it did not provide an explanation for its denial; it is not my role to speculate as to its

14

reason.  *See Somerset Cmty. Hosp. v. Allan B. Mitchell & Assoc., Inc.*, 685 A.2d 141, 147 (Pa.

Super. Ct. 1996) ("A trial court has broad discretion in ruling on a party's motion to amend

pleadings.").  Therefore, even if the Superior Court had determined the statute of limitations

issue (which it did not), because such a determination would not have been essential to its

judgment, the issue would still be appropriate for relitigation.

In light of the aforementioned uncertainties with respect to what was litigated, decided,

and essential to the state court judgments, I am guided by the Third Circuit's counsel that

"[r]easonable doubt as to what was decided by a prior judgment should be resolved against using

it as an estoppel." *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970).  Accordingly, I

conclude that issue preclusion is not appropriate in this case.

### B.      Statute of Limitations

"The statute of limitations requires aggrieved individuals to bring their claims within a

certain time of the injury, so that the passage of time does not damage the defendant's ability to

adequately defend against claims made." *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997).

"Statutes of limitations 'are designed to effectuate three purposes: (1) preservation of evidence;

(2) the right of potential defendants to repose; and (3) administrative efficiency and

convenience.'" *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 919 (Pa. Super. Ct. 2005)

(quoting *Kingston Coal Co.  v. Felton Min. Co.*, 690 A.2d 284, 288 (Pa. Super. Ct. 1997)).  Here,

First American argues that U.S. Bank's claims—breach of contract and bad faith—are barred as a

matter of law because the statute of limitations has expired.  First American also argues that the

doctrines of judicial and equitable estoppel do not apply to its statute of limitations defense.  I

agree that the undisputed facts demonstrate that the statute of limitations has run on U.S. Bank's

breach of contract claim, and I also agree that there are no facts submitted under which a reasonable jury could conclude that judicial estoppel or equitable estoppel applies in this case. U.S. Bank's bad faith claim, however, is not barred by the statute of limitations, though it is defeated on other grounds.

### 1.     Breach of Contract

Under Pennsylvania law, "[t]o successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005) (citations omitted). "Generally speaking, the statute of limitations begins to run as soon as the right to institute and maintain the suit arises." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007). In Pennsylvania, the statute of limitations for a breach of contract action is four years. *See* 42 Pa. Cons. Stat. § 5525(8).

As a preliminary matter, I note that this suit by U.S. Bank commenced on October 5, 2010. I dismissed the original complaint without prejudice to U.S. Bank's right to file an amended complaint with more sufficient factual allegations within twenty days from the date of dismissal. U.S. Bank filed an amended complaint on August 17, 2011, within the twenty day time period. Under Rule 15 of the Federal Rules of Civil Procedure, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Accordingly, the date of commencement of the suit for tolling purposes is the date of the filing of the original complaint: October 5, 2010. Therefore, any breach of contract would have had to have occurred on or after

16

October 5, 2006.

While there are several prior dates by which it could be argued that a breach of contract occurred, construing First American's motion in the light most favorable to U.S. Bank, I find that U.S. Bank could have instituted and maintained a suit following the sheriff's sale of the Fekos property. In Pennsylvania, "the general rule [is] that a sheriff's sale of property divests all junior liens on that property." *Unity Sav. Ass'n v. Am. Urban Sci. Found. Inc.*, 487 A.2d 356, 358 (Pa. Super. Ct. (1984)) (citing *Albert J. Grosser Co. v. Rosen*, 259 A.2d 679 (Pa. 1969)); *see also* 42 Pa. Const. Stat. § 8152.[4] U.S. Bank's lien on the Fekos property was divested on October 7, 2005, the date of the sheriff's sale; thus, so was its interest in the property. Therefore, on that date U.S. Bank suffered a loss. *See Boyer v. Walker*, 714 A.2d 458, 463 (Pa. Super. Ct. 1998) ("[W]e agree with [the plaintiff's] assertion that he 'lost all interest in the property' when it was sold at the sheriff's sale."). Although there exist contractual provisions in the title insurance policy that make the process of filing a claim less than clear, as discussed more thoroughly below, those provisions do not impact when the statute of limitations began to run. Accordingly, as this suit was instituted more than four years after the sheriff's sale, U.S. Bank's breach of

---

[4]Section 8152, entitled "Judicial Sale as Affecting Lien of Mortgage," states in relevant part:

> **(a) General Rule**.–Except as otherwise provided in this section, a judicial sale or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property . . .
> ....
> **(c) Sale on a prior lien**.–A judicial or other sale of real estate in proceedings under a prior judgment or a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien.

42 Pa. Cons. Stat. § 8152 (a), (c).

contract claim is time-barred.

U.S. Bank argues that the statute of limitations never commenced because its loss was never "definitely fixed," as required in order to receive payment for the loss under the title insurance policy. (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 10.) Paragraph twelve of the Conditions and Stipulations to the title insurance policy states the following:

> **PAYMENT OF LOSS**
> (a) ...
> (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

(Def.'s Mot. Summ. J. Ex. D). Because the title insurance policy was one of indemnity and not one of guarantee, U.S. Bank argues that the loss following the sheriff's sale was not one in which a fixed monetary value was readily ascertainable, because the value of the Fekos property was in dispute. (*See id.* at 11.) For that reason, U.S. Bank argues that the statute of limitations was never triggered.

This argument fails for two reasons. First, the policy states that loss or damage shall be payable within thirty days "[w]hen liability and the extent of loss or damage has been definitely fixed *in accordance with these Conditions and Stipulations*." (Def.'s Mot. Summ. J. Ex. D (emphasis added).) There is nothing in the policy's Conditions and Stipulations section that defines a loss as "definitely fixed" only when a precise monetary value can be assigned to the property. Second, the Supreme Court of Pennsylvania has been clear that a loss in a title insurance policy occurs when the interest in the property is affected, not when loss amount has been "definitely ascertained." *See In re Gordon*, 176 A. 494, 495 (Pa. 1935) ("[W]hen the insured gets bad title, or the policy has been otherwise breached, the covenant of the insurer has

18

not been fulfilled, and there is a *liability*. A liability having attached, the only thing that remains

is to ascertain *its extent* in terms of dollars."). U.S. Bank's interest in the Fekos property was

arguably affected long before the sheriff's sale; however, viewing the facts in the light most

favorable to U.S. Bank, the interest was definitely affected when its lien was divested on October

7, 2005. At that point, there was definitely a loss, and at that a measurable loss,[5] such that U.S.

Bank could have maintained a suit. *See Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042-43

(Pa. Super. Ct. 1999) ("It is hornbook law that a statute of limitations begins to run as soon as the

right to institute suit arises. This is true regardless of whether the full extent of harm is known

when the action arises.") (internal citations omitted).[6]

U.S. Bank also points to different provisions within the Conditions and Stipulations

pertaining to filing a complaint that, in its opinion, are entirely inconsistent. For example,

paragraph 5 provides:

> **PROOF OF LOSS OR DAMAGE**
> In addition to and after the notices required under Section 3 of these
> Conditions and Stipulations have been provided the Company, a
> proof of loss or damage signed and sworn to by the Insured claimant
> shall be furnished to the Company within 90 days after the insured
> claimant shall ascertain the facts giving rise to the loss or damage.

(Def.'s Mot. Summ. J. Ex. D.) Section (a) to paragraph twelve also requires, prior to payment by

First American, that the insured produce the policy for endorsement of the payment, unless the

---

[5]I agree with the Supreme Court of Pennsylvania in that "[m]easuring is not a creative
act." *In re Gordon*, 176 A. 494, 497 (Pa. 1935). U.S. Bank could have measured the loss
following the sheriff's sale by a number of ways (e.g., testimony at trial or independent
valuation); however, it chose not to.

[6]Arguably, U.S. Bank could have instituted suit on the title insurance policy on March 4,
2003, when the agent of its predecessor in title, Fairbanks, discovered the defect in the title and
noticed First American.

policy has been destroyed, in which case the insured must present First American with proof of loss or destruction.  (*See id.*)  Citing these provisions, U.S. Bank argues that these conditions were never met, and thus there was never a clear breach of the title insurance policy that would trigger the statute of limitations.  (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 11.)

This argument is also without merit.  To begin, if there was never a breach of the agreement, as U.S. Bank asserts, then I do not understand the purpose of this suit.  That assertion aside and as stated above, I have found that there was a breach of the title insurance policy, and that the breach occurred at least by the day of the sheriff's sale.  "Once a creditor's lien on property is divested, so too is his right to execute on that property."  *Boyer*, 714 A.2d at 463 (quoting *Unity Sav. Ass'n*, 478 A.2d at 358).  According to Schedule B of the title insurance policy, the Allied mortgage was to be the first lien on the Fekos property.  (Def.'s Mot. Summ. J. Ex. E, pt. A at 6.)  This was the contracted-for interest in the property.  It was not promptly recorded, however, and subsequently became a fourth, and thus junior, lien on the property. (Pl.'s Mot. Summ. J. 6.)  While a fourth lien position was not the interest in the Fekos property that was contracted for, it was possible that First American could have cured the defect in the title by paying off the senior liens and thus returning the Allied mortgage—now held by U.S. Bank—to the senior lien position.  Nevertheless, at the time of the sheriff's sale U.S. Bank's interest in the property was undisputedly divested, and accordingly, First American was in breach of contract.  The contractual language describing what is needed for notice of a claim, proof of loss, payment of loss, etc., does not postpone the commencement of the statute of limitations; otherwise, the insured could delay in bringing a claim on a cognizable loss and thus delay the start of the limitations period indefinitely.  Such a practice, if allowed, would "contravene[] the

underlying purpose for statutes of limitations and nullif[y] the benefits therefrom." *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. Super. Ct. 1994). Therefore, while the Conditions and Stipulations may not be written in the clearest contractual parlance, they do not impact the commencement of the statute of limitations.

## 2. Judicial Estoppel[7]

U.S. Bank argues that First American should not be allowed to assert a statute of limitations defense because of the doctrine of judicial estoppel. "The doctrine of judicial estoppel prevents a party from asserting inconsistent claims in different legal proceedings." *In re Mintze*, 434 F.3d 222, 232 (3d Cir. 2006). "Judicial estoppel can be applied when a party asserts a certain position in a legal proceeding and prevails, only to assert a contrary position later on because of changed interests." *In re Armstrong World Indus.*, 432 F.3d 507, 517 (3d Cir. 2005). "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from 'playing fast and loose with the courts.'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (quoting *Scarano v. Cent. R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)) (citation and internal quotation marks omitted).

U.S. Bank argues that First American took the position in the Washington County Action that U.S. Bank and JP Morgan were entirely separate entities, and that the declaratory judgment action was solely aimed at JP Morgan. For that reason, U.S. Bank argues that First American

---

[7]In the Third Circuit, federal judicial estoppel law applies in diversity cases. *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009) ("[W]e believe that '[a] federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose.'" (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 n.2 (3d Cir. 1996))).

should be judicially estopped from arguing that the declaratory judgment action also constituted

notice to U.S. Bank of a denial of a claim for statute of limitations purposes. Because I have

found that the statute of limitations began to run at the sheriff's sale, and that the declaratory

judgment action does not impact that statute of limitations at all, the doctrine of judicial estoppel

does not apply to this suit.

### 3. Equitable Estoppel

U.S. Bank also argues that First American should not be allowed to assert a statute of

limitations defense under the doctrine of equitable estoppel. "Equitable estoppel is a doctrine

that prevents one from doing an act differently than the manner in which another was induced by

word or deed to expect." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983).

It "arises when one by his acts, representations, or admissions, or by his silence when he ought to

speak out, intentionally or through culpable negligence induces another to believe certain facts to

exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the

former is permitted to deny the existence of such facts." *In re Tallarico's Estate*, 228 A.2d 736,

741 (Pa. 1967) (quoting *Northwestern Nat'l Bank v. Commonwealth*, 27 A.2d 20, 23 (Pa. 1942))

(internal quotations omitted). "The two essential elements of equitable estoppel are inducement

and justifiable reliance on that inducement. The inducement may be words or conduct and the

acts that are induced may be by commission or forbearance provided that a change in condition

results causing disadvantage to the one induced."[8] *Novelty*, 457 A.2d at 503-04. "It is well

---

[8]I note that in its memorandum opposing summary judgment, U.S. Bank uses the phrases
"equitable tolling" and "equitable estoppel" interchangeably. (Pl.'s Mem. Opp'n to Def.'s Mot.
Summ. J. 18.) These are, however, entirely separate doctrines. *See Oshiver v. Levin, Fishbein,
Sedran & Berman*, 38 F.3d 1380, 1389-90 (3d Cir. 1994). The elements of equitable estoppel are
inducement and justifiable reliance. *See Novelty*, 457 A.2d at 503-04. The federal doctrine of

established . . . that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence." *Id*. (quoting *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975)).

Here, there is absolutely no evidence of either of the elements of equitable estoppel—inducement and justifiable reliance—with respect to U.S. Bank. There is no evidence of any correspondence between First American and U.S. Bank at all; thus, here it was not possible that U.S. Bank could have even been induced to rely on a communication by First American, as there was none. Furthermore, in order for equitable estoppel to apply, U.S. Bank needs to satisfy the burden of clear evidence. Here, it has not even met the lesser burden of a preponderance of the evidence. For that reason alone, the application of equitable estoppel to this case is inappropriate. Indeed, it borders on the absurd to argue that First American, whose only involvement with the ownership of the mortgage occurred at settlement in 2002, could have induced U.S. Bank and its predecessors in interest to the mortgage, which were involved in the actual changes in ownership of the mortgage, to rely on First American's research.

Even if U.S. Bank could successfully argue that it was induced to rely on the naming of JP Morgan as trustee, U.S. Bank has failed to meet the burden of clear evidence that such reliance is justifiable. "To be justifiable, reliance upon the representation of another must be reasonable." *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002). "Whether reliance on an

---

equitable tolling applies "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *In re Mushroom Transp. Co.*, 382 F.3d 325, 338-39 (3d Cir. 2004) (quoting *Oshiver*, 38 F.3d at 1387). The Third Circuit has stated that this doctrine should be applied "sparingly." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005).

alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false." *Id.* (quoting *Fort Washington Res., Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994)). Here, all of the information as to who was the correct party in interest, or correct trustee, was in U.S. Bank's possession. Therefore, reliance was not justifiable.

As noted, U.S. Bank incorrectly lists the elements of equitable estoppel and instead argues under the elements of equitable tolling. Regardless, the statute of limitations would not be tolled under the doctrine of equitable tolling either. With respect to the first criterion for allowance of equitable tolling—that "the defendant [] actively misled the plaintiff respecting the plaintiff's cause of action"—U.S. Bank's chief argument is that it was misled into believing that the correct party in interest was JP Morgan because First American had listed it as the trustee in the Washington County declaratory judgment action. *In re Mushroom Transp. Co.*, 382 F.3d 325, 338 (3d Cir. 2004). According to U.S. Bank, "[t]here was therefore no reason for [foreclosure counsel] . . . to believe that First American's 'research' was incorrect . . . ." (Pl.'s Mem. Opp'n to Def.'s Mot. Summ. J. 18.) This argument entirely ignores the fact that there is not any evidence that shows that First American named JP Morgan as the trustee in an attempt to actively mislead U.S. Bank. Moreover, as the correct trustee, U.S. Bank should have known that it was the true party in interest; it should not have relied on information from an adversarial party to a lawsuit. Additionally, the exchanges between First American and JP Morgan are immaterial to U.S. Bank as JP Morgan had no interest in the Fekos property.

With respect to the second criterion, U.S. Bank was never "in some extraordinary way . . . prevented from asserting [its] rights." *In re Mushroom Transp. Co.*, 382 F.3d at 338. At any

time, U.S. Bank, as trustee and the correct party in interest, was free to bring suit against First American.  The litigation between JP Morgan and First American did not impede U.S. Bank's rights in any way.

Finally, and under the third criterion, U.S. Bank continues to argue that it is the "trust" and not the "trustee" that is the real party in interest, and therefore to deny U.S. Bank its day in court as representative of the trust would be unjust, especially because the trust attempted to "timely assert[] [its] rights mistakenly in the wrong forum" by pursuing counterclaims in the Washington County action.  *Id.* at 388-89.  This argument is without merit.  Under Pennsylvania law, the trustee is always a correct party in interest to maintain a suit, and presumably, be sued. *See* Pa. R.C.P. 2002(b)(1) ("A plaintiff may sue in his or her own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff is acting in a fiduciary or representative capacity, which capacity is disclosed in the caption and in the plaintiff's initial proceeding."); *see also* 6 Goodrich Amram 2d § 2002(b):2 ("In an action to enforce an obligation arising out of a trust, the trustee is the real party in interest and is entitled to maintain the action without joining the beneficiaries of the trust.").  The "trustee" argument was appropriately rejected by the state court in the Washington County action.  Furthermore, this is not a situation where a litigant tried to timely assert its rights in the wrong forum.  Here, U.S. Bank, as trustee, attempted to assert its rights in the proper forum after the statute of limitations had already run.  Therefore, U.S. Bank's arguments for equitable tolling fail.

For the foregoing reasons, under the undisputed facts U.S. Bank's breach of contract action is barred by the statute of limitations.  Simply stated, U.S. Bank bought a worthless

mortgage on February 1, 2004,[9] and a claim against First American. The sheriff's sale of October 7, 2005 divested its lien. U.S. Bank did not pursue its claim against First American until October 5, 2010, after the statute of limitations had run.

### C.    Bad Faith

In addition to a breach of contract, U.S. Bank alleges that First American acted in bad faith, pursuant to 42 Pa. Cons. Stat. § 8371. "To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012) (quoting *Condio v. Erie Ins. Exch.,* 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)). "Thus, an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Id*. (quoting *Amica. Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011)) (internal quotation marks omitted). "The insured is required to meet its burden of proving 'bad faith' by clear and convincing evidence." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). The statute of limitations for a bad faith claim is two years. *See Ash v. Continental Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007).

First American claims that U.S. Bank's bad faith claim is barred by the two-year statute of limitations. I find it unnecessary to discuss the statute of limitations defense, as the bad faith claim fails on other grounds.

---

[9]The collective value of the two intervening mortgage liens, not even considering the prior mortgage to Beneficial that was not paid off, easily exceeded the value of the insured property.

"The essence of a bad fath claim" is "the unreasonable and intentional (or reckless) denial of benefits," *Post*, 691 F.3d at 523 (quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)) (internal quotation marks omitted). In this case, U.S. Bank never submitted a claim, and First American never denied it benefits until this lawsuit was filed. Accordingly, there is no genuine issue of material fact to put a bad faith claim in play. Furthermore, I have found that First American's defense based on the statute of limitations not only has a reasonable basis upon which to deny a claim (had one actually been made), but is persuasive.

In its motion for summary judgment, U.S. Bank argues that First American's bad faith is found in its lack of a good faith investigation into the facts, along with its failure to communicate with the insured. (Pl.'s Mot. Summ. J. 17-18.) U.S. Bank also argues that bad faith occurred through First American's alleged initiation and prolongation of litigation in Washington County. (*See id.* at 18-22.) I find that these arguments are not only unpersuasive, but that they also fall far short of evidence from which a reasonable jury could find clear and convincing evidence to maintain a bad faith claim given the undisputed facts in the record.

Fairbanks, the servicer of the Trust for U.S. Bank's predecessor in title, first notified First American of a defect in the Allied mortgage for the Fekos property via letter on December 8, 2003. (Pl.'s Mot. Summ. J. Ex. E, pt. C.) First American replied to Fairbanks a week later, on December 15, 2003, and advised it to proceed with its foreclosure action. (*Id*. Ex. E, pt. D.) Fairbanks's next correspondence with First American came over two-and-a-half years later, on January 29, 2006, when it informed First American that the Fekos property had been sold at a sheriff's sale nearly nine months earlier. (*Id*. Ex. E, pt. F.) First American responded the

following month, on July 27, 2006, and informed Fairbanks that it had initiated an investigation into the matter, and that Fairbanks would be contacted when the facts had been ascertained. (*Id*. Ex. E, pt. G.) Then, on March 23, 2007, First American filed a declaratory judgment action in Washington County against JP Morgan Chase to determine what obligations, if any, it had to JP Morgan. (*Id*. Ex. E, pt. H.)

U.S. Bank cites *WV Realty, Inc. v. Northern Insurance Company of New York* for the proposition that a bad faith claim may be asserted against an insurer when the insurer employs legal tactics to increase the cost of litigation, thus making the pursuit of a claim prohibitive. *See* 334 F.3d 306, 314 (3d Cir. 2003). While that is true, *WV Realty* also states that in cases where bad faith claims have gone forward on the basis that an insurer was using litigation to avoid an obligation under a policy, courts have found "something . . . suggesting that the conduct was intended to evade the insurer's obligations under the insurance contract," such as abusive motions by the insurer, baseless counterclaims, or obstructive conduct. *Id*. Here, U.S. Bank does not provide evidence, and certainly not clear and convincing evidence, that the purpose of the declaratory judgment litigation was to evade obligations under the policy. The complaint in that action stated that its purpose was to determine the rights and obligations of all parties to the litigation under the title insurance policy. (Pl.'s Mot. Summ. J. Ex. E., pt. H at 2.) That is not only a valid issue to bring before a court, but the Washington County Court of Common Pleas eventually ruled in favor of First American and against JP Morgan, and the judgment was upheld by the Superior Court of Pennsylvania. While this favorable ruling lends further credibility to First American's argument that it did not bring the suit for the purpose of delaying an obligation under the policy, it also weighs in favor of a finding that, should First American have denied a

claim, it had a reasonable basis in doing so, as JP Morgan was never a party in interest.

Therefore, because there are no genuine issues of material fact with respect to U.S. Bank's bad faith claim, summary judgment is granted in favor of First American as to that claim.

### D. U.S. Bank's Motion for Summary Judgment

U.S. Bank rests its motion for summary judgment primarily on the arguments that First American's agent breached its contract with U.S. Bank for failing to record its mortgage as a first lien against the Fekos property, and that it had acted in bad faith by employing dilatory litigation tactics and refusing, without a reasonable basis, to pay U.S. Bank's claim. As I have discussed above, the undisputed facts demonstrate that the statute of limitations has run on U.S. Bank's admittedly strong breach of contract claim. In addition, and also previously explained, there are no facts by which a reasonable jury could find clear and convincing evidence to maintain a claim of bad faith. Accordingly, and with regard to those two arguments, U.S. Bank's motion for summary judgment will be denied.

U.S. Bank concludes its motion for summary judgment with an argument that the statute of limitations has not run on either of its claims in light of the doctrine of judicial estoppel. As stated above, judicial estoppel does not apply to this case because the undisputed facts clearly show that the statute of limitations began to run at the sheriff's sale of the Fekos property. The Washington County action had no bearing on the commencement of the statute of limitations; hence, U.S. Bank's argument invoking judicial estoppel, which whether the Washington County action constituted a denial of a claim, is unavailing. For that reason, summary judgment with respect to U.S. Bank's final argument will be denied.

**IV.     CONCLUSION**

For the foregoing reasons, motion for summary judgment is granted in favor of First American and denied against U.S. Bank.  An appropriate order follows.